UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:10-cr-00117-JAW |
| | ) | |
| RASHID KAKANDE | ) | |

**ORDER ON GOVERNMENT'S MOTION *IN LIMINE* TO PERMIT EVIDENCE OUTSIDE THE CHARGED CONSPIRATORIAL PERIOD**

In this prosecution for conspiracy to defraud the United States, the Government seeks a pretrial ruling on the admissibility of evidence regarding the Defendant's conduct before the dates of the alleged conspiracy. The Court concludes that the Government's proposed evidence is likely admissible.

I.  **STATEMENT OF FACTS**

On July 13, 2010, a federal grand jury indicted Rashid Kakande for engaging in a conspiracy to commit marriage fraud in which United States citizens would enter into sham marriages with foreign nationals. *Indictment* (Docket # 2). In general, for the United States citizens, the motive was greed; they were paid to pretend they were married, *id.*, and for the foreign nationals, the motive was citizenship; the marriage with a United States citizen increased their chances for a change in immigration status leading to citizenship. *Id.* The indictment alleges that from December 5, 2003 to June 19, 2007, Mr. Kakande engaged in overt acts in which he arranged a number of sham marriages and profited for doing so. A jury has been selected and the case is scheduled to begin on March 21, 2011.

In anticipation of trial, the Government filed a motion *in limine* seeking permission to admit evidence that on dates before those alleged in the Indictment, Mr. Kakane engaged in the same type of conduct. *Gov't's Mot.* in Limine *to Permit Evid. Outside the Charged Conspiratorial Period* (Docket # 59) (*Gov't's Mot.*). More specifically, the Government seeks to introduce evidence that Mr. Kakande arranged and participated in sham marriages between November 1999 and June 2003. *Gov't's Mot.* at 6–10. The Government argues that such evidence should be admitted under Rule 404(b) because it has special relevance; it demonstrates Mr. Kakande's knowledge of the immigration process, his intent to participate in a sham marriage conspiracy, his *modus operandi* and common scheme, his lack of mistake, and his identity. *Id.* It contends that these issues are of primary importance in proving the facts alleged because Mr. Kakande "is globally denying involvement and putting the Government to its proof." *Id.* at 7.

## II. DISCUSSION

### A. Rule 404(b)

Federal Rule of Evidence 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

FED. R. EVID. 404(b). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681,

2

686 (1988). The First Circuit analyzes the admissibility of 404(b) evidence pursuant to a two-pronged framework. *United States v. DeCicco*, 439 F.3d 36, 50 (1st Cir. 2006); *United States v. Sebaggala*, 256 F.3d 59, 67 (1st Cir. 2001); *United States v. Mahone*, 328 F. Supp. 2d 77, 85-86 (D. Me. 2004). Under the first prong, the Court "must determine whether the evidence in question has any 'special relevance' exclusive of defendant's character or propensity." *DeCicco*, 439 F.3d at 50 (citing *Sebaggala*, 256 F.3d at 67). Under the second prong, "even if some 'special relevance' is found, the evidence must nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* This is because Rule 404(b) "incorporates *sub silentio* the prophylaxis of . . . Rule 403." *Sebaggala*, 256 F.3d at 67. The Government seeks to introduce three categories of prior bad acts evidence. *Gov't's Mot.* at 7–10.

**B.  Marriage to Olivia Brooks**

The Government first seeks to introduce evidence that on November 12, 1999, Mr. Kakande married U.S. Citizen Olivia Brooks and thereafter obtained a change in his own immigration status based on that marriage. *Gov't's Mot.* at 7. The Government says this has special relevance because it demonstrates that before the dates in the Indictment, Mr. Kakande had personal knowledge of the process by which a foreign national obtained a change of immigration status based on marriage. *Id.* The Government also asserts that the evidence will corroborate Mr. Kakande's own admissions that foreign nationals came to him seeking to be

3

introduced to U.S. citizens to marry because they knew he had gotten his immigration status changed as a result of his marriage to a U.S. citizen. *Id.*

The Court agrees that evidence of Mr. Kakande's marriage to Ms. Brooks and subsequent successful citizenship application based on that marriage will have special relevance. The Government bears the burden of proving all elements of the offense. One issue is whether Mr. Kakande has been sufficiently sophisticated in U.S. immigration policies to participate in the alleged marriage fraud conspiracy, and Mr. Kakande's actual participation in the immigration process based on his marriage would be particularly relevant. This knowledge could also help identify him as a participant in the conspiracy to the extent it encouraged other foreign nationals to seek his experience in the immigration process and thereby gave him an opportunity to further the conspiracy. The Court concludes that evidence of the Defendant's marriage to Ms. Brooks satisfies the first prong of the 404(b) analysis.

The second prong is a difficult analysis prior to trial. At this time the Court is unaware of the Defendant's defenses to the charges, the specific contents of the Government's proposed testimony, and of whether the Government has other ways of proving the Defendant had knowledge of the immigration process prior to the conspiracy. *See United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000) ("The prejudice to an opponent can be said to be 'unfair' when the proponent of the evidence could prove the fact by other, non-prejudicial evidence." (internal quotations omitted)). Without context, the Court cannot conduct a fully-informed balancing of the evidence's probative value against its potential for prejudice. For

4

that reason, the Court defers making a definite finding of admissibility of individual items of evidence until trial. *See United States v. Landry*, No. CR-08-186-B-W, 2009 WL 1026287 at *1 (D. Me. Apr. 16, 2009) (Where Government's motion *in limine* sought introduction of 404(b) testimony, Court explained that it "declined to issue a pre-trial ruling" on the motion "[b]ecause the admissibility of [the] testimony depended on developments at trial").

Nevertheless, to guide the parties, the Court advises them that the evidence is likely to be admitted. The evidence is potentially prejudicial to Mr. Kakande, since it accuses him of previously defrauding the United States and it denigrates the integrity of his marital relationship. However, given the Government's burden to prove every element of the offense beyond a reasonable doubt and its expectation that the Defendant is "globally denying involvement," evidence of his marriage to Ms. Brooks may be necessary to prove his knowledge of the immigration process, which in turn may be necessary to prove his intent and his identity.

The evidence is not too remote. *See United States v. Fields*, 871 F.2d 188, 198 (1st Cir. 1989) ("if the acts admitted under rule 404(b) are too remote in time, this substantially weakens their probative value and weighs in favor of exclusion."). The Defendant's marriage to Ms. Brooks occurred roughly four years before the beginning of the alleged conspiracy. *Gov't's Mot*. at 6–7. The First Circuit has upheld the admission of Rule 404(b) evidence far more remote from the charged offenses than here. *Frankhauser*, 80 F.3d at 649 (time span of seven years is not too remote); *United States v. Hadfield*, 918 F.2d 987, 994 (1st Cir. 1990) (five years

5

between prior bad act and charged act is acceptable). Furthermore, the passage of four years is not likely to have diminished the Defendant's knowledge of the immigration process. The Court concludes that the temporal gap between the charged conduct and the Rule 404(b) conduct is sufficiently close in time to satisfy Rule 403 requirements.[1]

### C. Pre-Indictment Marriages in Massachusetts

The Government also seeks to introduce evidence that Mr. Kakande was involved in marriages in Massachusetts in 2002. *Gov't's Mot.* at 8–9. It plans to elicit testimony from Olivia Kakande that she lived with the Defendant in late 2002 when a white U.S. citizen and a black African visited their house. *Id.* at 8. She is expected to testify that the white woman told Ms. Kakande she was being paid to get married and that Ms. Kakande then helped the woman prepare for the wedding. *Id.*

The Government also plans to elicit testimony from Tina Bayne. She is expected to testify that in 2002 Mr. Kakande introduced her to the concept of getting paid to marry; that he provided details of the scheme, including that she could make a total of $5,000; and that the scheme involved getting married, visiting an immigration lawyer, and attending an immigration interview. *Id.* Finally, Ms. Bayne is expected to testify that she and Augusta Yates carried out the scheme on

---

[1] The Court's preliminary conclusion may change in the context of the trial. For example, if the Defendant were to concede that he had knowledge of the immigration process before the conspiracy, his marriage to Ms. Brooks would be less relevant and might be substantially outweighed by the danger of unfair prejudice. *See Old Chief v. United States*, 519 U.S. 172 (1997) (holding that district court abused its discretion by spurning a defendant's offer to concede fact of prior conviction and instead admitting full record of prior judgment to prove "prior felony conviction" element of offense).

6

August 5, 2002 and were paid by Mr. Kakande at the conclusion of the wedding ceremony. *Id.*

The Court concludes that this proposed evidence satisfies the first prong of the 404(b) analysis. Not only is it probative of Mr. Kakande's knowledge of the immigration process, it provides details of his process of arranging sham marriages, which the Government asserts will match anticipated trial testimony regarding the marriages charged in the Indictment. *Gov't's Mot.* at 9. These details help establish the Defendant's *modus operandi*, which may identify him with the conspiracy. *United States v. Fanfan*, 468 F.3d 7, 12 (1st Cir. 2006) (post-conspiracy drug transaction "evidenced the *modus operandi* by which the conspiracy was carried out, which in turn answered the question of the identity of the lead perpetrator—a purpose for which bad act evidence is allowed."). Moreover, Ms. Bayne and Ms. Yates were Maine residents who traveled to Massachusetts to participate in these marriages. *Gov't's Mot.* at 9. The Government intends to establish that Ms. Bayne introduced the Defendant to individuals in Maine, which led to the "genesis of the scheme" and the shift of the conspiratorial conduct to Maine. This evidence is probative of the Defendant's opportunity and common scheme. *See United States v. DeCicco*, 370 F.3d 206, 212–13 (1st Cir. 2004).

Turning to the second prong, again, trial admissibility depends on trial context. The Massachusetts marriage evidence could be more prejudicial to the Defendant than evidence of his marriage to Ms. Brooks in that it involves conduct very similar to the conduct alleged in the Indictment. Because of its similarity,

7

there is some danger a jury will use the evidence "not on the narrow point for which it is offered but rather to infer that a defendant has a propensity towards criminal behavior." *DeCicco*, 370 F.3d at 213. At the same time, this is always a risk with 404(b) evidence. *Id*. The Massachusetts evidence has greater probative value and involves conduct in closer temporal proximity to the charged conduct than the Brooks evidence. The Court may mitigate any risk of prejudice with an appropriate limiting instruction. Those factors together are likely to outweigh any prejudice to the Defendant.

### D. Pre-Indictment Marriages in Maine

Finally, the Government seeks to introduce evidence that Mr. Kakande conducted at least seven sham marriages in Maine between August 2002 and June 2003. *Gov't's Mot.* at 9–10. According to the Government, multiple witnesses have identified the Defendant from a photo line-up as personally involved in each marriage, and their testimony regarding the manner in which the marriages took place and the Defendant's role will match the evidence of the manner and conduct of the charged marriages. *Id*. It contends that the evidence is probative of *modus operandi* and identity, common scheme or plan, and lack of mistake. *Id*. at 10. For the same reasons the Court determined that the Massachusetts marriage evidence is likely to be admissible and because this evidence is closer in time to the charged conduct, the Court concludes that the Maine marriage evidence is likely to be admissible.

## III. CONCLUSION

Subject to the context at trial, the Court preliminarily GRANTS the Government's Motion *in Limine* to Permit Evidence Outside of the Charged Conspiratorial Period (Docket # 59).

SO ORDERED

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 17th day of March, 2011